**E-Filed 5/18/2011**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> OSCAR A. AVILES, IRIS MENDOZA, NELIS MENDOZA, RENALDO R. MENDOZA, individually and doing business as Golden Fish Restaurant, <br><br> Defendants. | Case Number 5:10-cv-04213-JF/HRL <br><br> ORDER[1] (1) DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") moves for entry of default judgment in the amount of $112,200.00 against Defendants Oscar A. Aviles, Iris Mendoza, Nelis Mendoza, and Renaldo Mendoza, individually and doing business as Golden Fish Restaurant. Plaintiff seeks damages stemming from Defendants' alleged violation of 47 U.S.C. § 605(a) and conversion of Plaintiff's property. Defendant Reynaldo Mendoza moves to set aside entry of default. The Court has considered the moving papers and the oral argument presented at the hearing on March 11, 2011. While Mendoza has shown that he did not engage in culpable

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 10-4213 JF
ORDER (1) DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC3)

1  conduct leading to his default, his motion will be denied because he has not shown that he could
2  assert a potentially meritorious defense.  Accordingly, Plaintiff's motion for default judgment
3  will be granted in part.

## I. BACKGROUND

**A.  Procedural history**

Plaintiff filed the instant action on September 16, 2010.  Plaintiff subsequently provided proof of service on Reynaldo Mendoza, Oscar A. Aviles, and Nelis Mendoza.  (Docket No. 5-7.)  On November 24, 2010, Plaintiff moved for entry of default against Nelis Mendoza and Reynaldo Mendoza.  (Docket No. 13.)  The clerk entered default on December 2, 2010.  (Docket No. 18.)  The same day, the Court entered notice of the bankruptcy of Oscar Aviles.  (Docket No. 15.)  On December 28, 2010, Plaintiff moved for entry of default against Iris Mendoza.  (Docket No. 21.)  Default was entered on January 5, 2011.  The same day, the Court entered notice of the bankruptcy for Nelis Mendoza.  (Docket No. 22.)  On January 10, 2011, Plaintiff moved for default judgment against Reynaldo and Iris Mendoza.  (Docket No. 18.)  Plaintiff provided proof of service indicating that a copy of the notice of application and application for default judgment had been mailed to Defendant.  (*Id.*)  On February 4, 2011, the Court received a letter from Reynaldo Mendoza and counsel representing Reynaldo Mendoza filed a notice of appearance on March 7, 2011. (Docket No. 30.)  The instant motion was filed on April 15, 2011. (Docket No. 32.)

**B.  Factual history**

Plaintiff is a distributor of sports and entertainment programming.  It purchased the rights to broadcast a September 19, 2009, boxing match between Floyd Mayweather Jr. and Juan Manuel Marquez, together with undercard bouts, televised replay, and color commentary (collectively, the "Program").  It then entered into sublicenses with third parties such as casinos, bars, and social clubs, allowing the sublicensees to exhibit the Program to their patrons.  The Program was broadcast in interstate commerce by means of an encrypted transmission, and only Plaintiff's sublicensees were entitled to decrypt that transmission.

On the day of the broadcast, Nathan Tate ("Tate"), an investigator hired by Plaintiff, observed an exhibition of the Program in the Golden Fish Restaurant, a seafood restaurant in downtown Salinas. Defendants were not sublicensees entitled to exhibit the Program at the restaurant. Tate states that he entered the premises without paying a cover charge and observed the Program on a twenty-seven inch television. (Tate Declaration 2.) Between 7:35 p.m. and 7:45 p.m., he performed three headcounts, noting the presence of eight people on each count. (*Id.* at 3.) Tate states that the capacity of the establishment was eighty-five people. He indicates that the establishment did not have a satellite dish. (*Id.*)

## II. DISCUSSION

### A. Motion to Set Aside Default

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause." A good cause analysis under Rule 55(c) requires consideration of three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. *Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc*. 375 F.3d 922, 925-26 (9th Cir. 2004). These factors are disjunctive, and the Court may deny the motion if any of the three factors is present. *Id*. The moving party bears the burden of demonstrating that each of the factors is present. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).

#### 1. Defendant Did Not Engage in Culpable Conduct Leading to the Default

As the Ninth Circuit has held:

> Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not "intentional" under our default cases, and is therefore not necessarily–although it certainly may be, once the equitable factors are considered–culpable or inexcusable. . . . In contrast, we have typically held that a defendant's conduct was culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.

3

Case No. C 10-4213 JF
ORDER (1) DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC3)

*Knoebber*, 244 F.3d at 697-98.  Mendoza claims that his failure to answer was the result of his lack of familiarity with the legal system and lack of resources to retain counsel, compounded by his limited ability to communicate in English.  Mendoza states that he attended two scheduled case management conferences that unknown to him had been reset.  Mendoza Declaration, ¶ 4.  At one such conference, he submitted a handwritten note the Court to explain his circumstances.[2]  *Id.* ¶ 5.  Mendoza obtained *pro bono* counsel shortly before the hearing on Plaintiff's motion.  It is clear that Mendoza's default is not a result of "devious, deliberate, willful, or bad faith failure to respond."

### 2. Defendant Has Not Shown that He Has a Potentially Meritorious Defense to Plaintiffs' Claims

Where a defendant is relying upon "excusable neglect" in seeking to set aside a default or vacate a default judgment, he "need only show facts or law in support of a viable defense; it is not necessary that the defendant prove that [he] will prevail on that defense." *United States v. Approximately $73,562 in U.S. Currency*, No. C 08-2458 SBA, 2010 WL 503040 at *3 (N.D. Cal. Feb. 5, 2010) (citing *Knoebber*, 244 F.3d at 700).  However, a "mere general denial without facts to support it is not enough to justify vacating a default or default judgment." *Franchise Holding II, LLC v. Huntington Rest.'s Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (internal quotations marks omitted).

Mendoza requests additional time to file a responsive pleading and states that he will deny the allegations set forth in the complaint.  However, as Plaintiff points out, Mendoza has been represented by counsel since March 7, 2011, and thus he has had ample time to develop facts or law to support a defense.  Mendoza's declaration and letter do state that Mendoza ordered the Program through DirectTV for viewing by his family, and that he did not profit from showing the program.  Mendoza Decl., Ex. A.  However, even if the Court accepts these statements as true, they do not go to the issue of liability statutes to which good faith is not a defense.  *See Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, at *4 (N.D. Ohio

---

[2] The Clerk is hereby directed to enter the letter on the docket.

4

Case No. C 10-4213 JF
ORDER (1) DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC3)

June 22, 2009). At most, Mendoza's statements go to the issue of damages. Because the Court need not accept as true the allegations of a complaint that relate to damages, *see Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977), the Court need not set aside the default in order to consider arguments by Mendoza that may mitigate damages.

**B.      Motion for Default Judgment**

Plaintiff seeks $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), $100,000 in enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), and $2,200 in damages for conversion. Plaintiff also alleges that Defendants have violated 47 U.S.C § 553(a), which provides for statutory damages pursuant to subsection (c)(3)(A)(ii) and enhanced damages pursuant to subsection (c)(3)(B).

**1.      Whether to apply 47 U.S.C. § 605 or 47 U.S.C § 553**

"[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes*, 559 F.2d at 560 (citing *Pope v. United States*, 323 U.S. 1 (1944); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Plaintiff seeks damages pursuant to § 605, which "requires proof that a defendant has '(1) intercepted or aided the interception of, and (2) divulged or published, or aided the divulging or publishing of, a communication transmitted by the plaintiff.'" *California Satellite Systems v. Seimon*, 767 F.2d 1364, 1366 (9th Cir. 1985) (citing *National Subscription Television v. S & H TV*, 644 F.2d 820, 826 (9th Cir. 1981)). Plaintiff alleges in its complaint that it transmitted the Program, that Defendants unlawfully intercepted the Program, and that Defendant exhibited the Program. (Complaint ¶¶ 12-15.)

However, § 605 applies only to intercepted "radio" communications or broadcasts through the air, such as satellite broadcasts. *J & J Sports Productions, Inc. v. Man Thi Doan*, No. C-08-00324 RMW, 2008 WL 4911223, at *2 (N.D. Cal. Nov. 13, 2008) (citing *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996)). The pleadings do not allege that Defendant intercepted a satellite broadcast, and Tate stated that he did not observed a satellite dish at the Golden Fish Restuarant. (Tate Decl.) Plaintiff contends that it has been unable to ascertain

5

1  whether Defendants utilize a satellite dish only because Defendant has refused to answer the
2  complaint. Nonetheless, the Court may not enter default judgment if the factual allegations in
3  the pleadings are insufficient to establish liability.

4  At the same time, the complaint asserts a claim under 47 U.S.C. § 553, which "prohibits a
5  person from 'intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any
6  communications service offered over a cable system.'" *Man Thi Doan*, 2008 WL 4911223 at *2
7  (quoting 47 U.S.C. § 553(a)(1)) (alterations in the original). While Tate states that he did not
8  observed a cable box, (Tate Decl.), it is undisputed that Defendant intercepted the broadcast by
9  some means, and a cable box is hidden more easily than a satellite dish. *Accord J & J Sports
10 Productions, Inc. v. Guzman et al.*, 3:08-cv-05469-MHP, 2009 WL 1034218, at *2 (N.D. Cal.
11 April 16, 2009). Accordingly, Plaintiff's allegations are sufficient for present purposes to
12 establish Defendant's liability under § 553(a)(1).

13       **a.    Statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii)**

14 An aggrieved party may recover either actual damages pursuant to § 553(c)(3)(A)(i) or
15 statutory damages pursuant to § 553(c)(3)(A)(ii). A court may award statutory damages of "not
16 less than $250 or more than $10,000 as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).
17 While the violation in the instant case clearly are not egregious, Plaintiff requests the statutory
18 maximum, noting that at least one other district court has awarded the maximum statutory
19 damages available under § 605 under similar circumstances. *See J & J Sports Productions, Inc.
20 v. Flores*, No. 1:08-cv-0483 LJO DLB, 2009 WL 1860520, at *2 (E.D. Cal. June 26, 2009)
21 (awarding $10,000 in damages for the violation of § 605(a) in an establishment without a cover
22 charge and containing thirty-five people); *J & J Sports Productions, Inc. v. George*, No.
23 1:08cv090 AWI DLB, 2008 WL 4224616, at *2 (E.D. Cal. Sept. 15, 2008) (awarding $10,000 in
24 damages for the violation of § 605(a) in an establishment without a cover charge and containing
25 thirty people).

26 In the instant case, the establishment is described as a seafood restaurant rather than a bar
27 or other place of business where events are regularly shown to the public, there were only eight
28

6
Case No. C 10-4213 JF
ORDER (1) DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC3)

people in the establishment, and the Program was shown only on one twenty-seven inch television. These factors suggest that damages above the statutory minimum are unwarranted. The Court finds that an award of $250 is sufficient under the circumstances.

### b. Enhanced damages pursuant to 47 U.S.C. § 553(c)(3)(B)

47 U.S.C. § 553(c)(3)(B) provides that in the case of a willful violation for purposes of commercial advantage or private gain, "the court in its discretion may increase the award of damages . . . by an amount of not more than $50,000." Plaintiff alleges that Defendants' interception of the program was willful and for purposes of commercial advantage or private gain. (Complaint ¶ 14.) Facts alleged in the pleadings are binding upon the defaulting party. *Geddes*, 559 F.2d at 560.

However, while the Golden Fish Restaurant is a commercial establishment, it is not at all clear that it is "a business where certain events, such as boxing matches, would be shown to the public." *American Cablevision of Queens v. McGinn*, 817 F. Supp. 317, 320 (E.D.N.Y. 1993). In light of the fact that Tate observed only eight people present, the Program was shown on only one relatively small television, and there was no cover charge, the Court concludes that this is not an appropriate situation for the Court to exercise its discretionary authority to impose enhanced damages.

### 2. Damages for conversion

As a result of Defendant's default, the facts alleged in the pleadings are sufficient to establish that Defendant wrongfully denied Plaintiff ownership of the right to control the exhibition the Program and therefore are sufficient to establish that Defendant is liable for the tort of conversion. *See Culp v. Signal Van & Storage*, 142 Cal. App. 2d Supp. 859, 862 (Cal. App. Dep't Super. Ct. 1956). Pursuant to Cal. Civ. Code § 3336, Defendant is liable for the value of the property at the time of the conversion. Accordingly, Plaintiff is entitled to recover the sublicensing fee of $2,200.

### III. ORDER

For the foregoing reasons, Defendant's motion to set aside the default is denied, and

Plaintiff's motion is granted in part. Plaintiff shall recover $250 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii), and $2,200 pursuant to Cal. Civ. Code § 3336.

DATED: May 17, 2011

                                                                            JEREMY FOGEL
                                                                            United States District Judge

Case No. C 10-4213 JF
ORDER (1) DENYING DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND (2) GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
(JFLC3)